MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
MATTHEW L. ZOLLMAN, Deputy City Attorney
California State Bar No. 288966
     Office of the City Attorney
     1200 Third Avenue, Suite 1100
     San Diego, California 92101-4100
     Telephone:  (619) 533-5800
     Facsimile:  (619) 533-5856

Attorneys for Defendants CITY OF SAN DIEGO
and SAN DIEGO CHIEF OF POLICE DAVID NISLEIT

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JAMES FAHR; DESIREE BERGMAN;
COLIN RUDOLPH; SAN DIEGO
COUNTY GUN OWNERS PAC; AND
FIREARMS POLICY COALITION,
INC.,

          Plaintiffs,

     v.

CITY OF SAN DIEGO, CALIFORNIA
AND DAVID NISLEIT, IN HIS
OFFICIAL CAPACITY AS CHIEF OF
POLICE OF SAN DIEGO CITY,
CALIFORNIA,

          Defendants.

Case No.  21cv1676 BAS (BGS)

**DEFENDANTS CITY OF SAN DIEGO AND SAN DIEGO CHIEF OF POLICE DAVID NISLEIT'S RESPONSE TO PLAINTIFFS' APPLICATION FOR TRO; ALTERNATIVE MOTION FOR PRELIMINARY INJUNCTION**

Date:        October 19, 2021
Time:       9:30 a.m.
Judge:     Hon. Cynthia Bashant
Court Room: 4B

# TABLE OF CONTENTS

Page(s)

I.   Introduction ................................................................................................1

II.  Background...............................................................................................2

    A.   Plaintiffs' claims and their motion for injunctive relief .....................2

        1.   Plaintiffs' claims................................................................2
        2.   Plaintiffs' declarations ........................................................2

    B.   Legal Background ...............................................................3

        1.   Requirements under the Gun Control Act of 1968....................3
        2.   Unfinished frame and receiver kits circumvent the requirements of the Gun Control Act and pose a threat to public safety .........4
        3.   The Ordinance responds to the threat posed by unfinished receiver kits and ghost guns........................................................5

III. Legal Standard .........................................................................................6

IV.  Argument ...................................................................................................6

    A.   Plaintiffs are unlikely to succeed on the merits .................................7

        1.   The Ordinance does not violate the Second Amendment .........7

            a)   Plaintiffs failed to apply the two-step analysis required by the Ninth Circuit .............................................................7
            b)   The Ordinance does not burden conduct protected by the Second Amendment because it is a longstanding, presumptively valid regulation that does not interfere with San Diegans' right to defend "hearth and home".............8
            c)   In the alternative, the Ordinance passes heightened scrutiny ...........................................................................9

        2.   Plaintiffs' takings claim cannot support injunctive relief and is unlikely to succeed ...............................................................11

            a)   Injunctive relief is not available for takings claims .......11
            b)   No compensation is due for restrictions on personal property........................................................................12

    B.   Plaintiffs failed to demonstrate irreparable harm .............................13

    C.   The public's interest in preventing and prosecuting gun crime outweighs Plaintiff's asserted hardship .............................................13

V.   Conclusion................................................................................................14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramski v. United States*,
573 U.S. 169 (2014) ................................................................3

*Adkins v. United States*,
82 Fed. Cl. 619 (2008) ...........................................................13

*Customer Co. v. City of Sacramento*,
895 P.2d 900 (Cal. 1995) .......................................................11

*District of Columbia v. Heller*,
554 U.S. 570 (2008) ............................................................7, 8

*E. Bay Sanctuary Covenant v. Biden*,
993 F.3d 640 (9th Cir. 2021).....................................................6

*Earth Island Inst. v. Carlton*
626 F.3d 462 (9th Cir. 2010).....................................................6

*Fesjian v. Jefferson*,
399 A.2d 861 (D.C. 1979).......................................................13

*Goldblatt v. Hempstead*,
369 U.S. 590 (1962) ..............................................................12

*Jackson v. City and Cty. of San Francisco*,
746 F.3d 953 (9th Cir. 2014).....................................................9

*Marzzarella*,
614 F.3d 85 (3d Cir. 2010) ..................................................10, 11

*McCutchen v. United States*,
145 Fed. Cl. 42 (2019), *aff'd* __F.4th__, 2021 WL 4485013 (Fed. Cir. Oct. 1,
2021)...................................................................................12

*McDonald v. City of Chicago*,
561 U.S. 742 (2010) ................................................................7

*Md. Shall Issue, Inc. v. Hogan*,
963 F.3d 356 (4th Cir. 2020)...................................................12

*Miller v. Bonta*,
__ F. Supp. 3d.__, No. 19-cv-1537, 2021 WL 2284132 (S.D. Cal. June 4, 2021),
*stayed pending appeal*, No. 21-55608, 2021 WL 2659807 (9th  Cir. June 21,
2021)....................................................................................8

*Mugler v. Kansas*,
123 U.S. 623 (1887) ..............................................................12

*NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
  700 F.3d 185 (5th Cir. 2012) ................................................................8

*Pena v. Lindley,*
  898 F.3d 969 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct.
  108 (2020) ..........................................................................................10

*Preseault v. I.C.C.,*
  494 U.S. 1 (1990) ..............................................................................11

*Rupp v. Becerra,*
  Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9 (C.D. Cal. May 9,
  2018) ..................................................................................................13

*Silvester v. Harris,*
  843 F.3d 816 (9th Cir. 2016) ..........................................................9, 10

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency,*
  535 U.S. 302 (2002) ..........................................................................12

*United States v. Chovan,*
  735 F.3d 1127 (9th Cir. 2013) ........................................................7, 10

*United States v. Riverside Bayview Homes, Inc.,*
  474 U.S. 121 (1985) ..........................................................................11

*United States v. Salerno,*
  481 U.S. 739 (1987) ..........................................................................11

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008) ................................................................................6

*Young v. Hawaii,*
  992 F.3d 765 (2021) ........................................................................7, 9

**Statutes**

18 U.S.C. § 922(k) (2015) ....................................................................3
18 U.S.C. § 923(i) (2004) ....................................................................3

**Other Authorities**

86 Fed. Reg. 27720-01 ........................................................................4
86 Fed. Reg. 27722 ............................................................................5
86 Fed. Reg. 27722 ............................................................................4
86 Fed. Reg. 27723 ......................................................................4, 13
86 Fed. Reg. 27726 ..........................................................................13
86 Fed. Reg. 27726 ......................................................................4, 5

H.R. Rep. No. 116-88 (2019) ..........................................................4, 5

San Diego Ordinance O-21367.......................5, 6, 9, 10, 12, 13, 14

San Diego Municipal Code § 53.18(c)(1) ............................5, 9, 12
San Diego Municipal Code § 53.18(c)(2) ............................5, 9, 12
San Diego Municipal Code § 53.18(c)(3) ................................5, 12
San Diego Municipal Code § 53.18(c)(4) ................................6, 12

## Regulations

27 C.F.R. § 478.11 (2019) ...................................................................3
27 C.F.R. § 478.92(a) (2019) ...............................................................3
27 C.F.R. § 479.11(2019) ....................................................................3

## Constitutional Provisions

U.S. Const. amend. II...........................................................................7
U.S. Const. amend. V .........................................................................12

## I.      Introduction

This Court should deny Plaintiffs' application for temporary restraining order, and, alternative request for a preliminary injunction. San Diego Ordinance O-21367 (Sept. 23, 2021) ("Ordinance")[1] amends the San Diego Municipal Code (SDMC) by adding section 53.18 prohibiting the possession of firearms that lack serial numbers – commonly called "ghost guns" – and the kits that are used to assemble these virtually untraceable firearms.  Contrary to Plaintiffs' contentions, these ghost gun kits and resultant ghost guns do not occupy a privileged place in federal constitutional law.  No precedent supports their view.  The Ordinance is constitutional.

The Second Amendment does not insulate ghost guns from reasonable public safety legislation such as the Ordinance.  The Second Amendment's core right is the possession of firearms for defense of hearth and home. The Ordinance does not violate the Second Amendment because it does not interfere with that core right.  Any San Diegan who could legally purchase a firearm, or firearm components, for home defense before the Ordinance can still do so today, provided that the firearm or component has the requisite serial number.  There is no evidence that the Ordinance will impede lawful access to firearms for home defense.

The Fifth Amendment's takings clause does not hamstring San Diego's traditional power to regulate, and indeed prohibit, dangerous private property.  Public safety and the importance of firearm tracing necessitates the prohibition of Plaintiffs' unserialized firearms and constituent parts, and thus not a taking.

Plaintiffs' irreparable harm and public interest arguments are predicated on alleged constitutional violations.  Because there was no constitutional violation, those arguments fail. Injunctive relief is not appropriate here.

---

[1] O-2022-7, referenced in Plaintiffs' briefing, is the internal tracking number for this legislation. After final passage on September 23, 2021, the City Clerk assigned Ordinance Number O-21367 to the subject legislation. The remainder of this brief refers to the as enacted Ordinance Number O-21367.

## II.     Background

### A.     Plaintiffs' claims and their motion for injunctive relief

#### 1.     Plaintiffs' claims

Plaintiffs are James Fahr ("Fahr"), Desiree Bergman ("Bergman"), Colin Rudolph ("Rudolph")[2], San Diego County Gun Owners PAC ("SDCGO"), and Firearms Policy Coalition, Inc. ("FPC"). ECF No. 1, ¶¶ 13-17. Defendants are the City of San Diego and San Diego Chief of Police, David Nisleit. *Id.* ¶¶ 18-19.

Plaintiffs allege two federal constitutional theories.  They allege the Ordinance violates the Second Amendment's Keep and Bear Arms Clause and the Fifth Amendment's Takings Clause. *Id*. ¶¶ 129-166. Plaintiffs seek monetary and injunctive relief. *Id*. at 37-38.

#### 2.     Plaintiffs' declarations

Plaintiff Fahr alleges that he owns and possesses three non-firearm objects ("NFOs") that would be considered unfinished frames or receivers under the ordinance. ECF No. 2-1, ¶ 5. He intends to use those unfinished frames or receivers to construct California-compliant firearms, including California-compliant AR-15-platform semi-automatic rifles. *Id.* ¶ 6-7. Fahr alleges that under the Ordinance he must dispossess himself of his unfinished frames or receivers. *Id.* ¶ 10. But for the Ordinance and enforcement thereof, Fahr alleges he would purchase additional unfinished frames and receivers. *Id.* ¶ 12.

Plaintiffs Bergman and Rudolph filed identical declarations.  Each allegedly owns and possesses a NFO that would be considered an unfinished frame or receiver under the ordinance. ECF No. 2-2, ¶ 6; ECF 2-5, ¶ 6. Each intends to use their unfinished frame or receiver to construct a California-compliant firearm, including a California-compliant AR-15-platform semi-automatic rifles. ECF No. 2-2, ¶ 7-8; ECF 2-5, ¶ 7-8. Each further alleges that under the Ordinance they must

---

[2] Plaintiffs Fahr, Bergman, and Rudolph are collectively referred to as the "Individual Plaintiffs."

1   dispossess themselves of their unfinished frame or receiver and are prohibited from

2   purchasing additional unfinished frames or receivers.  ECF No. 2-2, ¶ 11, 13;

3   ECF 2-5, ¶ 11, 13.

4         **B.**    **Legal Background**

5             **1.**      **Requirements under the Gun Control Act of 1968**

6         "[F]or over [50] years [the Gun Control Act of 1968 has] regulated sales by

7   licensed firearms dealers, principally to prevent guns from falling into the wrong

8   hands." *Abramski v. United States*, 573 U.S. 169, 172 (2014).  The Gun Control Act

9   provides that "certain classes of people – felons, drug addicts, and the mentally ill,

10  to list a few – may not purchase or possess any firearm." *Id.* The Gun Control Act

11  further requires that each firearm built by a licensed manufacturer contain a serial

12  number unique to that firearm. 18 U.S.C. § 923(i) (2004); 27 C.F.R. § 478.92(a)

13  (2019). It is a crime to possess a firearm that has had its serial number obliterated.

14  18 U.S.C. § 922(k) (2015). The statute also imposes recordkeeping requirements on

15  federal firearm licensees so that a gun found on the street can be traced, through its

16  serial number, to its point of sale. *Abramski*, 573 U.S. at 173.

17        The serial number must be engraved or cast on the "frame or receiver" of the

18  weapon because that is the statutory "firearm." 18 U.S.C. § 923(i) (2004); 18

19  U.S.C. § 921(a)(3) (2019). The "[f]rame or receiver" – which the rest of this brief

20  will refer to simply as the "receiver" – is the part of the gun that receives the other

21  essential components of the gun, like the barrel and the firing pin. *See* 27 C.F.R. §

22  478.11 (2019); 27 C.F.R. § 479.11(2019). That is, other gun components are

23  attached to the receiver to create the complete gun. The graphic below shows

24  receivers in three types of guns:

25  / / /

26  / / /

27  / / /

28  / / /

*Firearms Verification*, ATF, https://bit.ly/2UJeryz (last visited October 6, 2021).

### 2. Unfinished frame and receiver kits circumvent the requirements of the Gun Control Act and pose a threat to public safety

"In recent years, individuals have been purchasing firearm parts kits with incomplete frames or receivers, commonly called '80% receivers,' either directly from manufacturers of the kits or retailers, without background checks or recordkeeping." Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. 27720-01, 27726 (2021). "Some of these parts kits contain most or all of the components (finished or unfinished) necessary to complete a functional weapon within a short period of time." *Id.*



Because an unfinished receiver requires additional work before it can be used in a working gun, it is not considered a "firearm" subject to the prescriptions and proscriptions of the Gun Control Act. *Id.* Since they lack anything that qualifies as a firearm, unfinished receiver kits can be sold without a background check and do not contain any serialized components that can be used to trace the weapon. H.R. Rep. No. 116-88, at 2 (2019). Guns made from unfinished kits are virtually untraceable if used in a crime, which is why they're commonly called ghost guns. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. 27720-01, 27722-23 (2021).

The U.S. House Committee on Homeland Security has concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at

2.  "Ghost guns not only pose a challenge on the front end, enabling prohibited buyers to purchase deadly weapons with just a few clicks online, but also on the back end, hamstringing law enforcement's ability to investigate crimes committed with untraceable weapons." *Id.* The ATF likewise identified ghost guns as a threat to public safety. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27722.

Law enforcement recovered nearly 24,000 ghost guns at crime scenes between 2016 and 2020. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27722. In order to curtail the proliferation of ghost guns, ATF has issued a notice of proposed rulemaking. If promulgated, the new rule will expand the definition of "firearm" to include unfinished receivers that are "designed to or may readily be converted to" fire projectiles. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27726. That means the sale of unfinished receiver kits will be subject to background checks and unfinished receivers will be serialized. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27726.

### 3.    The Ordinance responds to the threat posed by unfinished receiver kits and ghost guns.

The Ordinance addresses the threat posed by unserialized firearms and firearm components.  First, the Ordinance prohibits possession, purchase, transport, or receipt of an unfinished receiver that lacks a serial number. San Diego Ordinance O-21367; SDMC § 53.18(c)(1). Second, the Ordinance prohibits the sale, offer to sell, transfer, or offer to transfer of an unfinished receiver that lacks a serial number. Ordinance O-21367; SDMC § 53.18(c)(2). Third – with exceptions for inoperable, antique, collectable, and pre-1968 firearms – the Ordinance prohibits possession, purchase, transport, or receipt of an unserialized firearm. Ordinance O-21367; SDMC § 53.18(c)(3).  Finally – with exceptions for inoperable, antique, collectable, and pre-1968 firearms – the Ordinance prohibits the sale, offer to sell,

1  transfer, or offer to transfer of an unserialized firearm. Ordinance O-21367; SDMC
2  § 53.18(c)(4).
3      The ordinance is necessary in order to eliminate unserialized, untraceable
4  firearms, thereby promoting and protecting the public health, safety, and general
5  welfare of the residents of the City of San Diego. Ordinance O-21367.

6  ## III.   Legal Standard

7      "'An injunction is a matter of equitable discretion' and is 'an extraordinary
8  remedy that may only be awarded upon a clear showing that the plaintiff is entitled
9  to such relief.'" *Earth Island Inst. v. Carlton,* 626 F.3d 462, 469 (9th Cir. 2010)
10  (quoting *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22, 32 (2008)).  To qualify
11  for a preliminary injunction a plaintiff must demonstrate: (1) a likelihood of success
12  on the merits; (2) a likelihood of irreparable harm; (3) that the balance of equities
13  favors the plaintiff; and (4) that the injunction is in the public interest. *Winter*, 555
14  U.S. at 20. When the party opposing injunctive relief is the government – as is the
15  case here – the third and fourth prerequisites merge. *E. Bay Sanctuary Covenant v.*
16  *Biden*, 993 F.3d 640 (9th Cir. 2021).

17  ## IV.   Argument

18      Plaintiffs assert a claim based on the Second Amendment and a claim based
19  on the federal Takings Clause. ECF No. 1, ¶¶ 151, 165. The Ordinance is
20  constitutional under Second Amendment and Takings Clause doctrine and Plaintiffs
21  are unlikely to succeed on the merits. Because their irreparable harm and public
22  interest arguments are predicated on constitutional violations, those arguments fail
23  as well.
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

**A.** **Plaintiffs are unlikely to succeed on the merits**

    **1.** **The Ordinance does not violate the Second Amendment**

        **a)** **Plaintiffs failed to apply the two-step analysis required by the Ninth Circuit**

The Second Amendment expressly states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan,* 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). "Like most rights, the right secured by the Second Amendment is not unlimited" and historically speaking "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller,* 554 U.S. at 626. The Second Amendment is fully applicable to states and municipalities through the Fourteenth Amendment. *See McDonald v. City of Chicago*, 561 U.S. 742, 790-91 (2010).

The Ninth Circuit has adopted a two-step framework to evaluate Second Amendment claims after *Heller* and *McDonald,* as exemplified in its recent decision in *Young v. Hawaii*, 992 F.3d 765, 783-84 (2021) (en banc). First, Plaintiff must show that the Ordinance burdens conduct protected by the Second Amendment. *Id.* If the law burdens protected Second Amendment conduct, then the second step requires determining the appropriate level of scrutiny and applying it to the challenged law. *See Id.*

Plaintiffs have not attempted to make the showing required by the binding Ninth Circuit case law cited above. *See* ECF No. 2, at 15-16. Instead, Plaintiffs put forth a "hardware test" from a district court case that is contrary to U.S. court of appeals decisions and has been stayed by the Ninth Circuit. *See* ECF No. 2, at 12 (citing *Miller v. Bonta*, __ F. Supp. 3d.__, No. 19-cv-1537, 2021 WL 2284132

7

1   (S.D. Cal. June 4, 2021), *stayed pending appeal*, No. 21-55608, 2021 WL 2659807

2   (9th Cir. June 21, 2021)). Applying the Second Amendment analysis mandated by

3   the Ninth Circuit shows that the Ordinance is constitutional.

> **b)**   **The Ordinance does not burden conduct protected by the Second Amendment because it is a longstanding, presumptively valid regulation that does not interfere with San Diegans' right to defend "hearth and home"**

7   Plaintiffs' challenge fails at step one because the Ordinance does not burden

8   Second Amendment protected conduct.  The Ordinance's serialization requirements

9   are properly classified as "longstanding" gun-control measures that are

10  "presumptively lawful" and thus do not burden the Second Amendment. *Heller*,

11  554 U.S. at 635.  Laws tracking and restricting the possession of firearms date back

12  to colonial times. See *NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms,&*

13  *Explosives,* 700 F.3d 185, 200 (5th Cir. 2012).  Moreover, "a regulation can be

14  deemed 'longstanding' even if it cannot boast a precise founding-era analogue."

15  *NRA,* 700 F.3d at 196-97. For example, *Heller's* examples of "longstanding"

16  regulations –a ban on firearms possession by felons and the mentally ill – don't

17  have precise founding-era analogs. *Id*. Serialization dates to the same time period as

18  *Heller's* examples and should also be considered a longstanding and presumptively

19  valid measure.

20  Plaintiffs' challenge fails at step one for an additional reason.  The Ordinance

21  only regulates unserialized, unfinished receivers, and unserialized firearms – the

22  law therefore does not interfere with the core right to "defense of hearth and home"

23  because Individual Plaintiffs' ability to use any all serialized firearms to defend

24  their homes remains unchanged. *Id*. Moreover, none of the Individual Plaintiffs

25  stated that if they dispose of their unfinished frames and unfinished receivers, they

26  will lack any firearms to defend their homes. *See* ECF Nos. 2-1, 2-2, 2-5.  Because

27  the Ordinance doesn't interfere with the core right of the Second Amendment,

28  Plaintiffs' challenge fails at step one of the analysis.

1  Plaintiffs argue that the Ordinance burdens their right to "self-manufacture"

2  firearms. ECF No. 2, at 12-15.  However, they present no evidence that self-

3  assembling from unserialized components is necessary or superior for home

4  defense, nor do they cite caselaw finding that the Second Amendment extends to

5  assembling – as opposed to keeping and bearing – firearms.  Individual Plaintiffs

6  are not stripped of an opportunity to self-manufacture and assemble firearms and

7  constituent parts so long as they are serialized. *See* Ordinance O-21367; SDMC §

8  53.18(c)(1)-(2).  Accordingly, the Ordinance does not burden constitutionally

9  protected activity.

10  c) **In the alternative, the Ordinance passes heightened scrutiny**

11

12  Under *Young,* this Court need not reach step two of the analysis because the

13  Ordinance does not burden constitutionally protected activity. *Young,* 992 F.3d at

14  783-84. If the Court does reach step two, however, it should apply intermediate

15  scrutiny and uphold the Ordinance.

16  Intermediate scrutiny is the default level of scrutiny for Second Amendment

17  cases. *See Silvester v. Harris*, 843 F.3d 816, 822-823 (9th Cir. 2016) (collecting

18  cases), *cert. denied sub nom.; Silvester v. Becerra*, 138 S. Ct. 945 (2018). "[I]f a

19  challenged law does not implicate a core Second Amendment right, or does not

20  place a substantial burden on the Second Amendment right, [courts] may apply

21  intermediate scrutiny." *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953,

22  960-61 (9th Cir. 2014). Strict scrutiny applies only in the rare case where a measure

23  "implicates the core of the Second Amendment right and severely burdens that

24  right." *Silvester,* 843 F.3d at 821.

25  As previously explained, the Ordinance does not implicate the core Second

26  Amendment right of home defense. The Ordinance regulates firearms that are not

27  imprinted with serial numbers – the law therefore does not interfere with the right

28  to defense of hearth and home because Individual Plaintiffs' ability to use any and

1  all serialized firearms to defend their homes remains unchanged. Nor does the

2  Ordinance implicate any purported right to self-manufacture firearms. Plaintiffs are

3  not stripped of an opportunity to self-manufacture and assemble firearms and

4  constituent parts so long as they are serialized or fall within an exception.

5      <u>Intermediate Scrutiny</u>: A statute is constitutional under intermediate scrutiny

6  as long as (1) the government's stated goal is "significant, substantial, or important"

7  and (2) there is a "reasonable fit" between the statute and the government's goal.

8  *Silvester*, 843 F.3d at 821-22. Intermediate scrutiny is not a strict test, and it does

9  not require that the government choose "the least restrictive means of furthering a

10  given end." *Silvester*, 843 F.3d at 827.

11      Ghost gun kits are a threat to public safety because they circumvent

12  background checks and are untraceable through law enforcement database.

13  Ordinance O-21367. "It is self-evident" that public safety is an important

14  government interest. *Chovan*, 735 F.3d at 1139; *see also Jackson*, 746 F.3d at 965.

15  Additionally, The Ninth Circuit has already held that "preserving the ability of law

16  enforcement to conduct serial number tracing – effectuated by limiting the

17  availability of untraceable firearms – constitutes a substantial or important interest."

18  *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018), *cert. denied sub nom. Pena v.*

19  *Horan*, 141 S. Ct. 108 (2020). Thus, the Ordinance satisfies the first prong of

20  intermediate scrutiny.

21      Because the Ordinance targets only unserialized firearms that are not within a

22  categorical exception, that bypass background checks by virtue of self-assembly,

23  and that are untraceable without a serial number, the Ordinance is a reasonable fit

24  for achieving the City's objectives of decreasing the threat that unserialized

25  firearms pose to public safety and preserving law enforcement's ability to trace

26  firearms. See also *Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010) (holding that

27  "[r]egulating the possession of un[serialized] firearms" fits "closely with the

28  interest in ensuring the traceability of weapons"). The Ordinance "reaches only

conduct creating a substantial risk of rendering a firearm untraceable." *Id.* at 98. It does not prevent any San Diegan who is legally permitted to obtain a firearm from buying a serialized firearm (or assembling one starting with a serialized receiver) for home defense.

Strict Scrutiny: Even under strict scrutiny, the Ordinance is constitutional. A firearms law passes strict scrutiny if it is "narrowly tailored to serve a compelling state interest." *Marzzarella*, 614 F.3d at 99. Crime prevention and investigating gun violence are compelling interests. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (1987)).

The Ordinance is narrowly tailored to serve the City's compelling interest because it leaves intact Plaintiffs' ability to use any and all serialized firearms to defend their homes while concurrently making it more difficult for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime.

### 2. Plaintiffs' takings claim cannot support injunctive relief and is unlikely to succeed

#### a) Injunctive relief is not available for takings claims

In general, "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to a taking." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127–28 (1985) (citation omitted). "[T]he Fifth Amendment does not require that just compensation be paid in advance of or even contemporaneously with the taking." *Preseault v. I.C.C.*, 494 U.S. 1, 11 (1990). Plaintiffs can bring an inverse condemnation suit against the City of San Diego to remedy any alleged taking of their property. *Customer Co. v. City of Sacramento*, 895 P.2d 900, 905 (Cal. 1995). Accordingly, injunctive relief is inappropriate.

/ / /

**b)      No compensation is due for restrictions on personal property.**

Plaintiffs' takings claim also fails on the merits because neither a physical, nor regulatory taking has occurred.

Physical Taking: The Ordinance does not effect a physical taking. The Takings Clause expressly prohibits the taking of "private property . . . *for public use*, *without just compensation*." U.S. Const. amend. V (emphasis added). A physical taking of property occurs only "[w]hen the government physically takes possession of an interest in the property for some public purpose." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). The Ordinance is a prohibition against unserialized firearms and unserialized, unfinished receivers. Ordinance O-21367; SDMC § 53.18(c)(1)-(4). It does not transfer title of the unfinished receivers or unserialized firearms to the City of San Diego, nor is there any indication that the city intends to put the devices to its own use.  Federal courts have already rejected this exact takings argument in connection with bump-stock bans. *Md. Shall Issue, Inc. v. Hogan,* 963 F.3d 356, 366 (4th Cir. 2020); *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *aff'd* __F.4th__, 2021 WL 4485013 (Fed. Cir. Oct. 1, 2021). Because Plaintiffs' property is not being commandeered for public use, there is no physical taking.

Regulatory Taking: A government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue, Inc.*, 963 F.3d at 366-67. The police power exception to the Takings Clause provides that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887).  "If [an] ordinance is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial uses does not render it unconstitutional. *Goldblatt v. Hempstead,* 369 U.S. 590, 592 (1962).

The Ordinance seeks to regulate ghost guns to eliminate unserialized, untraceable firearms, thereby promoting and protecting the public health, safety, and general welfare of the resident of the City of San Diego.  Ordinance O-21367.

Several other courts analyzing firearms regulations in the context of the police power exception to the Takings Clause have reached similar conclusions. *See Adkins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on the sale of machine guns to anyone other than law enforcement agencies did not constitute a physical or regulatory taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) (holding that a statue requiring machine guns denied registration be sold, surrendered, or disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9 (C.D. Cal. May 9, 2018) (dismissing a Takings claim on the grounds that a California prohibition on certain weapons represented an exercise of police power and not a taking). The Ordinance is a valid exercise of the city's police power and, for that reason, Plaintiffs are unlikely to succeed on their Takings Claim.

### B.      Plaintiffs failed to demonstrate irreparable harm

Plaintiffs' claims of irreparable harm are predicated entirely on the alleged violations of their Second and Fifth Amendment rights. ECF No. 2, at 21-22. As discussed above, the Ordinance does not burden Second Amendment rights. Additionally, the Ordinance does not effect a taking.  Even if the Ordinance did effect a taking, Plaintiffs will not suffer irreparable harm because monetary relief is available. Thus, Plaintiffs have not shown they are likely to suffer irreparable harm.

### C.      The public's interest in preventing and prosecuting gun crime outweighs Plaintiff's asserted hardship

Unserialized, unfinished receivers may be purchased without a background check and easily assembled into untraceable ghost guns. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27723, 27726. The majority of ghost guns recovered by the San Diego Police Department are seized

1   from individuals prohibited from legally possessing or purchasing firearms.

2   Ordinance O-21367. The Ordinance attempts to close a regulatory loophole that has

3   allowed for the proliferation of untraceable firearms. Plaintiffs do not even attempt

4   to balance their purported interests against the City of San Diego's public safety

5   interest. For that reason, the public interest outweighs any hardship suffered by

6   Plaintiffs.

7   **V.      Conclusion**

8          The Ordinance serves an important public interest and does not burden core

9   Second Amendment rights. This Court should deny Plaintiffs' application for a

10  temporary restraining order and alternative motion for a preliminary injunction.

11          Dated:  October 7, 2021                    MARA W. ELLIOTT, City Attorney

12

13                                                     By _____

14                                                         Matthew L. Zollman
                                                           Deputy City Attorney
15
                                                       Attorneys for Defendants CITY OF
16                                                     SAN DIEGO and SAN DIEGO
                                                       CHIEF OF POLICE DAVID
17                                                     NISLEIT

18

19

20

21

22

23

24

25

26

27

28