MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
MATTHEW L. ZOLLMAN, Deputy City Attorney
California State Bar No. 288966
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856

Attorneys for Defendants CITY OF SAN DIEGO
and SAN DIEGO CHIEF OF POLICE DAVID NISLEIT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FAHR; DESIREE BERGMAN; COLIN RUDOLPH; SAN DIEGO COUNTY GUN OWNERS PAC; AND FIREARMS POLICY COALITION, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, CALIFORNIA AND DAVID NISLEIT, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE OF SAN DIEGO CITY, CALIFORNIA,<br><br>    Defendants. | Case No. 21cv1676 BAS (BGS)<br><br>**DEFENDANTS CITY OF SAN DIEGO AND SAN DIEGO CHIEF OF POLICE DAVID NISLEIT'S MOTION TO DISMISS UNDER RULE 12(B)(6)**<br><br>Date: January 3, 2022<br>Judge: Hon. Cynthia Bashant<br>Court Room: 4B<br>Trial: Not Set<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................1

    A. Plaintiffs and their claims ................................................................................1

    B. Legal Background ............................................................................................2

        1. Requirements under the Gun Control Act of 1968 ....................2

        2. Unfinished frame and receiver kits circumvent the requirements of the Gun Control Act and pose a threat to public safety .........3

        3. The Ordinance responds to the threat posed by unfinished receiver kits and ghost guns......................................................4

III. LEGAL STANDARD ............................................................................................5

IV. ARGUMENT .........................................................................................................5

    A. The Ordinance does Not Violate the Second Amendment ...................5

        1. The Ordinance does not burden constitutionally protected conduct. ......................................................................................6

        2. The Ordinance passes the applicable level of scrutiny...............8

    B. Plaintiffs' Takings Claim deserves Dismissal ..................................10

        1. Injunctive relief is not available for takings claims..................10

            a) Injunctive relief is not available for takings claims .......10

            b) No compensation is due for restrictions on personal property..........................................................................10

        2. No compensation is due for restrictions on personal property. 10

V. CONCLUSION .....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abramski v. United States*,
   573 U.S. 169 (2014) ................................................................................................2

*Akins v. United States*,
   82 Fed. Cl. 619 (2008) ..........................................................................................11

*Bell Atl. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................5

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..............................................................................................11

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
   375 F.3d 861 n.1 (9th Cir. 2004) ............................................................................3

*District of Columbia v. Heller*,
   554 U.S. 570 (2008) ........................................................................................5, 6, 7

*Fesjian v. Jefferson*,
   399 A.2d 861 (D.C. 1979) ....................................................................................12

*Goldblatt v. Hempstead*,
   369 U.S. 590 (1962) ..............................................................................................11

*Jackson v. City and Cty. of San Francisco*,
   746 F.3d 953 (9th Cir. 2014) ..................................................................................8

*Knick v. Township of Scott*,
   139 S. Ct. 2162 (2019) ..........................................................................................10

*Lucas v. S.C. Coastal Council*,
   505 U.S. 1003 (1992) ............................................................................................12

*Marzzarella*,
   614 F.3d 85 (3d Cir. 2010) .....................................................................................9

*McCutchen v. United States*,
   145 Fed. Cl. 42 (2019), *aff'd* 14 F.4th 1355 (Fed. Cir. Oct. 1, 2021) ..................11

*Md. Shall Issue v. Hogan*,
   353 F. Supp. 3d 400 (D. Md. 2018), aff'd, 963 F.3d 356 (4th Cir. 2020) ............12

*Md. Shall Issue, Inc. v. Hogan*,
   963 F.3d 356 (4th Cir. 2020) .........................................................................10, 11

*Mugler v. Kansas*,
   123 U.S. 623 (1887) ..............................................................................................11

*NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   700 F.3d 185 (5th Cir. 2012) .................................................................. 6, 7

*Pena v. Horan*,
   141 S. Ct. 108 (2020) ................................................................................. 9

*Pena v. Lindley*,
   898 F.3d 969 (9th Cir. 2018) ..................................................................... 9

*Preseault v. I.C.C.*,
   494 U.S. 1 (1990) ..................................................................................... 10

*Rupp v. Becerra*,
   Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9
   (C.D. Cal. May 9, 2018) ........................................................................... 12

*Silvester v. Becerra*,
   138 S. Ct. 945 (2018) ................................................................................. 8

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016) ..................................................................... 8

*Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*,
   535 U.S. 302 (2002) ................................................................................. 10

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ........................................................... 5, 7, 8

*United States v. Riverside Bayview Homes, Inc.*,
   474 U.S. 121 (1985) ................................................................................. 10

*United States v. Salerno*,
   481 U.S. 739 (1987) ................................................................................... 9

*United States v. Torres*,
   911 F.3d 1253 (9th Cir. 2019) ................................................................ 5, 6

*Young v. Hawaii*,
   992 F.3d 765 (2021) ................................................................................... 6

**Statutes**

18 U.S.C. § 921(a)(3) (2019) ............................................................................ 2
18 U.S.C. § 922(k) (2015) ................................................................................ 2
18 U.S.C. § 923(i) (2004) ................................................................................. 2

Fed R. Evid. § 201 ............................................................................................ 3
FRCP § 12(b)(6) ............................................................................................... 5
FRCP § 8(a)(2) ................................................................................................. 5

**Regulations**

27 C.F.R. § 478.11 (2019) ................................................................................ 2
27 C.F.R. § 478.92(a) (2019) ............................................................................ 2
27 C.F.R. § 479.11 (2019) ................................................................................ 2

86 Fed. Reg. 27720-01, 27722-23 (2021) ............................................................... 3
86 Fed. Reg. 27720-01, 27726 (2021) ................................................................ 3, 7
86 Fed. Reg. 27722 ................................................................................................ 4
86 Fed. Reg. 27726 ................................................................................................ 4

**Other Authorities**

*Firearms Verification*, ATF, https://bit.ly/2UJeryz (last visited October 6, 2021).... 3
H.R. Rep. No. 116-88, at 2 ................................................................................. 3, 4
H.R. Rep. No. 116-88, at 2 (2019) ......................................................................... 3

San Diego Ordinance O-21367 ................................................... 1, 4, 5, 6, 7, 10, 11

SDMC § 53.18(c)(1)-(4) .................................................................................. 1, 10
SDMC § 53.18(c)(1) ............................................................................................... 4
SDMC § 53.18(c)(2) ............................................................................................... 4
SDMC § 53.18(c)(3) ............................................................................................... 4
SDMC § 53.18(c)(4) ............................................................................................... 4

**Constitutional Provisions**

U.S. Const. amend. II .............................................................................................. 5
U.S. Const. amend. V ........................................................................................... 10

## I. INTRODUCTION

This Court should dismiss Plaintiffs' Complaint. San Diego Ordinance O-21367 (Sept. 23, 2021) ("Ordinance")[1] amends the San Diego Municipal Code (SDMC) by adding section 53.18 prohibiting the possession of firearms that lack serial numbers – commonly called "ghost guns" – and the kits that are used to assemble these virtually untraceable firearms. Plaintiffs contend that the Ordinance violates the Second Amendment's right "to keep and bear Arms" and the Fifth Amendment's Takings Clause.

The Ordinance is constitutional. The Second Amendment does not insulate ghost guns from reasonable public safety legislation such as the Ordinance. The Fifth Amendment's takings clause also does not hamstring San Diego's traditional power to regulate, and indeed prohibit, dangerous private property. Dismissal is warranted.

## II. BACKGROUND

### A. Plaintiffs and their Claims

Plaintiffs are James Fahr ("Fahr"), Desiree Bergman ("Bergman"), Colin Rudolph ("Rudolph")[2], San Diego County Gun Owners PAC ("SDCGO"), and Firearms Policy Coalition, Inc. ("FPC"). ECF No. 1, ¶¶ 13-17. Defendants are the City of San Diego and San Diego Chief of Police, David Nisleit. *Id.* ¶¶ 18-19.

Plaintiffs allege two federal constitutional theories. They allege the Ordinance violates the Second Amendment's Keep and Bear Arms Clause and the Fifth Amendment's Takings Clause. *Id.* ¶¶ 129-166. Plaintiffs seek monetary and injunctive relief. *Id.* at 37-38.

---

[1] O-2022-7, referenced in Plaintiffs' Complaint, is the internal tracking number for this legislation. After final passage on September 23, 2021, the City Clerk assigned Ordinance Number O-21367 to the subject legislation. The remainder of this motion refers to the as enacted Ordinance Number O-21367.

[2] Plaintiffs Fahr, Bergman, and Rudolph are collectively referred to as the "Individual Plaintiffs."

### B. Legal Background

#### 1. Requirements under the Gun Control Act of 1968.

"[F]or over [50] years [the Gun Control Act of 1968 has] regulated sales by licensed firearms dealers, principally to prevent guns from falling into the wrong hands." *Abramski v. United States*, 573 U.S. 169, 172 (2014). The Gun Control Act provides that "certain classes of people – felons, drug addicts, and the mentally ill, to list a few – may not purchase or possess any firearm." *Id.* The Gun Control Act further requires that each firearm built by a licensed manufacturer contain a serial number unique to that firearm. 18 U.S.C. § 923(i) (2004); 27 C.F.R. § 478.92(a) (2019). It is a crime to possess a firearm that has had its serial number obliterated. 18 U.S.C. § 922(k) (2015). The statute also imposes recordkeeping requirements on federal firearm licensees so that a gun found on the street can be traced, through its serial number, to its point of sale. *Abramski*, 573 U.S. at 173.

The serial number must be engraved or cast on the "frame or receiver" of the weapon because that is the statutory "firearm." 18 U.S.C. § 923(i) (2004); 18 U.S.C. § 921(a)(3) (2019). The "[f]rame or receiver" – which the rest of this brief will refer to simply as the "receiver" – is the part of the gun that receives the other essential components of the gun, like the barrel and the firing pin. *See* 27 C.F.R. § 478.11 (2019); 27 C.F.R. § 479.11(2019). That is, other gun components are attached to the receiver to create the complete gun. The graphic below shows receivers in three types of guns:



*Firearms Verification*, ATF, https://bit.ly/2UJeryz (last visited October 6, 2021).³

### 2. Unfinished frame and receiver kits circumvent the requirements of the Gun Control Act and pose a threat to public safety.

"In recent years, individuals have been purchasing firearm parts kits with incomplete frames or receivers, commonly called '80% receivers,' either directly from manufacturers of the kits or retailers, without background checks or recordkeeping." Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. 27720-01, 27726 (2021).  "Some of these parts kits contain most or all of the components (finished or unfinished) necessary to complete a functional weapon within a short period of time." *Id.*

Because an unfinished receiver requires additional work before it can be used in a working gun, it is not considered a "firearm" subject to the prescriptions and proscriptions of the Gun Control Act. *Id.* Since they lack anything that qualifies as a firearm, unfinished receiver kits can be sold without a background check and do not contain any serialized components that can be used to trace the weapon. H.R. Rep. No. 116-88, at 2 (2019). Guns made from unfinished kits are virtually untraceable if used in a crime, which is why they're commonly called ghost guns. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. 27720-01, 27722-23 (2021).

The U.S. House Committee on Homeland Security has concluded that "[g]host guns" present a "homeland security challenge." H.R. Rep. No. 116-88, at 2.  "Ghost guns not only pose a challenge on the front end, enabling prohibited buyers to purchase deadly weapons with just a few clicks online, but also on the

---

³ This Court can take judicial notice of the depiction of a "frame or receiver" as described on the government website of the Bureau of Alcohol, Tobacco, Firearms and Explosives. *See* Fed R. Evid. 201; *see Disabled Rights Action Comm. v. Las Vegas Events, Inc.,* 375 F.3d 861, 866 n.1 (9th Cir. 2004) (explaining that a court may take judicial notice of a government agency's records and other undisputed matters of public record under Fed. R. Evid. 201).

back end, hamstringing law enforcement's ability to investigate crimes committed with untraceable weapons." *Id.* The ATF likewise identified ghost guns as a threat to public safety. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27722.

Law enforcement recovered nearly 24,000 ghost guns at crime scenes between 2016 and 2020. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27722. To curtail the proliferation of ghost guns, ATF has issued a notice of proposed rulemaking. If promulgated, the new rule will expand the definition of "firearm" to include unfinished receivers that are "designed to or may readily be converted to" fire projectiles. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27726. That means the sale of unfinished receiver kits will be subject to background checks and unfinished receivers will be serialized. Definition of ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. at 27726.

### 3. The Ordinance responds to the threat posed by unfinished receiver kits and ghost guns.

The Ordinance addresses the threat posed by unserialized firearms and firearm components.  First, the Ordinance prohibits possession, purchase, transport, or receipt of an unfinished receiver that lacks a serial number. San Diego Ordinance O-21367; SDMC § 53.18(c)(1). Second, the Ordinance prohibits the sale, offer to sell, transfer, or offer to transfer of an unfinished receiver that lacks a serial number. Ordinance O-21367; SDMC § 53.18(c)(2). Third – with exceptions for inoperable, antique, collectable, and pre-1968 firearms – the Ordinance prohibits possession, purchase, transport, or receipt of an unserialized firearm. Ordinance O-21367; SDMC § 53.18(c)(3).  Finally – with exceptions for inoperable, antique, collectable, and pre-1968 firearms – the Ordinance prohibits the sale, offer to sell, transfer, or offer to transfer of an unserialized firearm. Ordinance O-21367; SDMC § 53.18(c)(4).

The ordinance is necessary in order to eliminate unserialized, untraceable firearms, thereby promoting and protecting the public health, safety, and general welfare of the residents of the City of San Diego. Ordinance O-21367.

## III. LEGAL STANDARD

This Court should dismiss Plaintiff's Complaint with prejudice. A court may dismiss a complaint for "failure to state a claim upon which relief may be granted." FRCP 12(b)(6). To survive dismissal under FRCP 12(b)(6), a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). Although a complaint need not contain detailed allegations, it must allege sufficient facts to "raise a right to relief above the speculative level." *Bell Atl. v. Twombly,* 550 U.S. 544, 555 (2007). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.

## IV. ARGUMENT

### A. The Ordinance does Not Violate the Second Amendment

The Second Amendment expressly states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "[T]he core of the Second Amendment is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Chovan,* 735 F.3d 1127, 1138 (9th Cir. 2013) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)). "Like most rights, the right secured by the Second Amendment is not unlimited" and historically speaking "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller,* 554 U.S. at 626.

To succeed on their Second Amendment claim, Plaintiffs must meet a two-part test. *See United States v. Torres,* 911 F.3d 1253, 1258 (9th Cir. 2019). First, Plaintiffs must show that the Ordinance burdens conduct protected by the Second

1  Amendment. *Id*. If it does not, this Court must affirm it "without further analysis."
2  *Young v. Hawaii*, 992 F.3d 765, 783-84 (2021) (en banc). If the law burdens
3  Second Amendment-protected conduct, then Plaintiffs must show that the
4  Ordinance fails the applicable level of means-end scrutiny. *See Id.*

          **1.    The Ordinance does not burden constitutionally protected conduct.**

Plaintiffs' challenge fails at step one because the Ordinance does not burden conduct protected by the Second Amendment. In *Heller*, the Supreme Court set out a non-exhaustive list of "longstanding" gun-control measures that are "presumptively lawful." 554 U.S. at 626-27, 627 n.26. Among them, prohibitions on the possession of firearms by felons and laws imposing conditions and qualifications on the commercial sale of firearms. See *Heller* 554 U.S. at 626-27. Those longstanding, presumptively lawful measures are constitutional because they do not burden conducted protected by the Second Amendment. *Torres,* 911 F.3d at 1258. In other words, if the challenged gun control measure is a longstanding, presumptively lawful regulation, the challenge fails at step one.

The Ordinance is a longstanding, presumptively lawful regulation. The Ordinance closes a loophole in the existing regulatory framework that allows certain prohibited persons to obtain firearms without a background check and allows for the sale of untraceable firearm precursor parts. Ordinance O-21367. Because the Ordinance is designed to regulate the commercial sale of firearms and to prevent possession by a class of presumptively dangerous individuals, it is analogous to several longstanding limitations on the right to bear arms identified as presumptively valid in *Heller*.

"[A] regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *NRA, Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196-97 (5th Cir. 2012). The historical record is replete with examples of colonial gun control laws tracking and restricting the

1  possession of firearms. See *NRA,* 700 F.3d at 200. Like those laws, the Ordinance is
2  intended to ensure that firearm ownership can be traced and to help prevent those
3  who are barred from possessing a firearm from buying or building one. Ordinance
4  O-21367. If those other measures are longstanding and presumptively valid, so is
5  the Ordinance.

6       The Ordinance does not burden conduct protected by the Second because it
7  does not interfere with the core right to "defense of hearth and home." *Chovan*, 735
8  F.3d at 1138 (quoting *Heller*, 554 U.S. at 635). The Ordinance regulates
9  unserialized, unfinished receivers, and unserialized firearms – Individual Plaintiffs'
10 ability to use any all serialized firearms to defend their homes remains unchanged.
11 Moreover, none of the Individual Plaintiffs contend they will lack firearms to
12 defend their homes. *See* ECF No. 1 at ¶¶ 96-101, 109-14, 121-26. Regardless, the
13 Ordinance does not prohibit self-assembling firearms. The Ordinance bars
14 assembling a firearm from unfinished receivers that don't' contain a serial number.

15      Plaintiffs argue that the Ordinance burdens their right to "self-manufacture"
16 firearms. ECF No. 1, at ¶ 143-44. However, they present no evidence that self-
17 manufacturing from unserialized components is necessary or superior for home
18 defense, nor do they cite caselaw finding that the Second Amendment extends to
19 manufacturing – as opposed to keeping and bearing – firearms. Moreover, the
20 "minimal effort, expertise, [and] equipment" required to complete a firearm from an
21 unfinished receiver is closer to self-assembly than self-manufacturing. Definition of
22 ''Frame or Receiver'' and Identification of Firearms, 86 Fed. Reg. 27720-01, 27726
23 (2021). Accordingly, the Ordinance does not burden any purported constitutional
24 right to self-manufacture that may exist.

25      Because the Ordinance doesn't burden conduct protected by the Second
26 Amendment, this Court need not reach step two of the analysis. If the Court does
27 reach step two, however, it should apply intermediate scrutiny and uphold the
28 Ordinance.

## 2. The Ordinance passes the applicable level of scrutiny.

Intermediate scrutiny is the default level of scrutiny for Second Amendment cases. *See Silvester v. Harris*, 843 F.3d 816, 822-823 (9th Cir. 2016) (collecting cases), *cert. denied sub nom.; Silvester v. Becerra*, 138 S. Ct. 945 (2018). "[I]f a challenged law does not implicate a core Second Amendment right, or does not place a substantial burden on the Second Amendment right, [courts] may apply intermediate scrutiny." *Jackson v. City and Cty. of San Francisco*, 746 F.3d 953, 960-61 (9th Cir. 2014). Strict scrutiny applies only in the rare case where a measure "implicates the core of the Second Amendment right and severely burdens that right." *Silvester,* 843 F.3d at 821.

As previously explained, the Ordinance does not implicate the core Second Amendment right of home defense. The Ordinance regulates firearms that are not imprinted with serial numbers – the law therefore does not interfere with the right to defense of hearth and home because Individual Plaintiffs' ability to use any and all serialized firearms to defend their homes remains unchanged. Nor does the Ordinance implicate any purported right to self-manufacture firearms. Plaintiffs are not stripped of an opportunity to self-manufacture and assemble firearms and constituent parts so long as they are serialized or fall within an exception.

<u>Intermediate Scrutiny</u>: A statute is constitutional under intermediate scrutiny as long as (1) the government's stated goal is "significant, substantial, or important" and (2) there is a "reasonable fit" between the statute and the government's goal. *Silvester*, 843 F.3d at 821-22. Intermediate scrutiny is not a strict test, and it does not require that the government choose "the least restrictive means of furthering a given end." *Silvester*, 843 F.3d at 827.

Ghost gun kits are a threat to public safety because they circumvent background checks and are untraceable through law enforcement database. Ordinance O-21367. "It is self-evident" that public safety is an important government interest. *Chovan*, 735 F.3d at 1139; *see also Jackson*, 746 F.3d at 965.

Additionally, The Ninth Circuit has already held that "preserving the ability of law enforcement to conduct serial number tracing – effectuated by limiting the availability of untraceable firearms – constitutes a substantial or important interest." *Pena v. Lindley*, 898 F.3d 969, 982 (9th Cir. 2018), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). Thus, the Ordinance satisfies the first prong of intermediate scrutiny.

Because the Ordinance targets only unserialized firearms that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable without a serial number, the Ordinance is a reasonable fit for achieving the City's objectives of decreasing the threat that unserialized firearms pose to public safety and preserving law enforcement's ability to trace firearms. See also *Marzzarella*, 614 F.3d 85, 99 (3d Cir. 2010) (holding that "[r]egulating the possession of un[serialized] firearms" fits "closely with the interest in ensuring the traceability of weapons"). The Ordinance "reaches only conduct creating a substantial risk of rendering a firearm untraceable." *Id.* at 98. It does not prevent any San Diegan who is legally permitted to obtain a firearm from buying a serialized firearm (or assembling one starting with a serialized receiver) for home defense.

Strict Scrutiny: Even under strict scrutiny, the Ordinance is constitutional. A firearms law passes strict scrutiny if it is "narrowly tailored to serve a compelling state interest." *Marzzarella*, 614 F.3d at 99. Crime prevention and investigating gun violence are compelling interests. *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 749 (1987)).

The Ordinance is narrowly tailored to serve the City's compelling interest because it leaves intact Plaintiffs' ability to use any and all serialized firearms to defend their homes while concurrently making it more difficult for prohibited persons to obtain firearms, and by proscribing possession of a firearm that would be untraceable if used in a crime.

### B. Plaintiffs' Takings Claim deserves Dismissal

#### 1. Injunctive relief is not available for takings claims.

In general, "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to a taking." *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 127-28 (1985) (citation omitted). "[T]he Fifth Amendment does not require that just compensation be paid in advance of or even contemporaneously with the taking." *Preseault v. I.C.C.*, 494 U.S. 1, 11 (1990). So long as the property owner has some way to obtain compensation after the fact, governments need not fear that courts will enjoin their activities. *Knick v. Township of Scott*, 139 S. Ct. 2162, 2176 (2019). Accordingly, injunctive relief is inappropriate because Plaintiffs may bring a suit for money damages.

#### 2. No compensation is due for restrictions on personal property.

Physical Taking: The Ordinance does not effect a physical taking. The Takings Clause expressly prohibits the taking of "private property . . . *for public use*, *without just compensation*." U.S. Const. amend. V (emphasis added). A physical taking of property occurs only "[w]hen the government physically takes possession of an interest in the property for some public purpose." *Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002). The Ordinance is a prohibition against unserialized firearms and unserialized, unfinished receivers. Ordinance O-21367; SDMC § 53.18(c)(1)-(4). It does not transfer title of the unfinished receivers or unserialized firearms to the City of San Diego, nor is there any indication that the city intends to put the devices to its own use. Federal courts have already rejected this exact takings argument in connection with bump-stock bans. *Md. Shall Issue, Inc. v. Hogan,* 963 F.3d 356, 366 (4th Cir. 2020); *McCutchen v. United States*, 145 Fed. Cl. 42, 54 (2019), *aff'd* 14 F.4th 1355

(Fed. Cir. Oct. 1, 2021). Because Plaintiffs' property is not being commandeered for public use, there is no physical taking.

Regulatory Taking: To the extent Plaintiffs suffered a loss of value of currently owned property, that loss is self-inflicted. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) (holding "self-inflicted" constitutional injuries "are not fairly traceable to the Government's purported[ly] [unconstitutional] activities" and thus do not give rise to standing). The Ordinance itself provides that it becomes enforceable one month after its enactment. Ordinance O-21367. Thus, Plaintiffs had ample time since the Ordinance's enactment and prior to its enforcement to self-manufacture firearms using the unfinished frames and unfinished receivers they acquired before the Ordinance's effective date, and to apply to the DOJ for a serial number pursuant to Section 29180.

Even assuming Plaintiffs' injuries were not self-inflicted, a government does not need to compensate owners when it prohibits a type of personal property through a valid law. *Md. Shall Issue, Inc.*, 963 F.3d at 366-67. The police power exception to the Takings Clause provides that "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking." *Mugler v. Kansas*, 123 U.S. 623, 668 (1887). "If [an] ordinance is otherwise a valid exercise of the [government's] police powers, the fact that it deprives the property of its most beneficial uses does not render it unconstitutional." *Goldblatt v. Hempstead,* 369 U.S. 590, 592 (1962). The Ordinance seeks to regulate ghost guns to eliminate unserialized, untraceable firearms, thereby promoting and protecting the public health, safety, and general welfare of the residents of the City of San Diego. Ordinance O-21367.

Several other courts analyzing firearms regulations in the context of the police power exception to the Takings Clause have reached similar conclusions. *See Akins v. United States*, 82 Fed. Cl. 619, 623-24 (2008) (holding that prohibition on

the sale of machine guns to anyone other than law enforcement agencies did not constitute a physical or regulatory taking); *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979) (holding that a statue requiring machine guns denied registration be sold, surrendered, or disposed, was a valid exercise of police power thereby not a taking); *Rupp v. Becerra*, Case No. 8:17-cv-00746-JLS-JDE, 2018 WL 2138452, *8-*9 (C.D. Cal. May 9, 2018) (dismissing a Takings claim on the grounds that a California prohibition on certain weapons represented an exercise of police power and not a taking). The Ordinance is a valid exercise of the city's police power and, for that reason, Plaintiffs are unlikely to succeed on their Takings Claim.

And while permanent physical invasions and complete deprivations of economically beneficial use can be categorical takings of *real* property, they are not categorical takings of *personal property*. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1027-28 (1992); *Md. Shall Issue v. Hogan,* 353 F. Supp. 3d 400, 413 (D. Md. 2018), aff'd, 963 F.3d 356 (4th Cir. 2020). The Ordinance affects only personal property, so those principles are irrelevant here.

## V.  CONCLUSION

For these reasons, this Court should dismiss Plaintiffs' claims.

Dated:  November 5, 2021          MARA W. ELLIOTT, City Attorney

By */s/ Matthew L. Zollman*
　　Matthew L. Zollman
　　Deputy City Attorney

Attorneys for Defendants CITY OF SAN DIEGO and SAN DIEGO CHIEF OF POLICE DAVID NISLEIT