MARA W. ELLIOTT, City Attorney
GEORGE F. SCHAEFER, Assistant City Attorney
MATTHEW L. ZOLLMAN, Deputy City Attorney
California State Bar No. 288966
    Office of the City Attorney
    1200 Third Avenue, Suite 1100
    San Diego, California 92101-4100
    Telephone: (619) 533-5800
    Facsimile: (619) 533-5856
    Email: MZollman@sandiego.gov
Attorneys for Defendants CITY OF SAN DIEGO and SAN DIEGO CHIEF OF POLICE DAVID NISLEIT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FAHR; DESIREE BERGMAN; COLIN RUDOLPH; SAN DIEGO COUNTY GUN OWNERS PAC; AND FIREARMS POLICY COALITION, INC., <br><br>Plaintiffs, <br><br>v. <br><br>CITY OF SAN DIEGO, CALIFORNIA AND DAVID NISLEIT, IN HIS OFFICIAL CAPACITY AS CHIEF OF POLICE OF SAN DIEGO CITY, CALIFORNIA, <br><br>Defendants. | Case No. 21cv1676 BAS (BGS) <br><br>**DEFENDANT CITY OF SAN DIEGO'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br>Date: February 7, 2022 <br>Judge: Hon. Cynthia Bashant <br>Court Room: 4B <br>Trial: Not set |

**I:    INTRODUCTION**

This Court should dismiss the complaint with prejudice. Its order denying Plaintiffs' motion for a temporary restraining order and preliminary injunction already determined the legal questions necessary to grant the instant motion to dismiss. This Court ruled that the Ordinance passed intermediate scrutiny because broad regulation of non-serialized firearms fit closely with governments' interests in crime prevention and investigation. ECF No. 21 at 20. And it concluded that the Ordinance did not affect a regulatory taking or a physical taking. *Id.* at 24, 26.

Those were purely legal determinations based on the same authorities at issue

in the current motion – the Ordinance's text, its stated objectives and official federal government reports on ghost guns. Plaintiffs point to no allegations in the complaint that would demand a different result from the one on their motion for a temporary restraining order and preliminary injunction. Nor are Plaintiffs able to rebut the Court's conclusions or the caselaw that it relied on.

Instead, Plaintiffs cry foul because San Diego chose to regulate conduct that threatens public safety and fells criminal investigations more closely than the state in which it sits. Nothing in the Constitution requires San Diego to copy California's chosen means for regulating untraceable firearms. Plaintiffs' arguments plainly fail, and dismissal is proper.

## II.     RELEVANT BACKGROUND

### A.     The narrow scope of the Ordinance.

Plaintiffs erroneously portray the Ordinance as "a blanket prohibition against all self-built modern operable firearms of any type." ECF No. 25, at 2.

This Court has already explained that the scope of the Ordinance is considerably narrower than Plaintiffs decry:

> Plaintiffs – and all San Diegans for that matter – may still acquire serialized versions of the firearms they seek to self-manufacture from licensed sellers under the Ordinance. Moreover, the Ordinance does not completely prohibit, as Plaintiffs suggest, the right to possess frames and receivers necessary create one's own firearm, but rather restricts the self-manufacturing of firearms using unfinished frames and unfinished receivers only. … [T]he Ordinance leaves completely unrestricted Plaintiffs' right to "self-assemble" firearms using pre-serialized, finished frames or finished receivers, which they can acquire from licensed sellers for the lawful purpose of defense of self and home. ***All that the Ordinance forbids is the purchase, possession, and sale of non-serialized "unfinished frames" and "unfinished receivers," which an individual must physically modify through milling, drilling, or other means in order to self-manufacture an operational firearm.***

ECF No. 21, at 15-16 (emphasis added).

San Diegans are free to assemble modern, operable guns, so long as they start from a serialized receiver and the resulting gun has a serial number. The Ordinance does not, as Plaintiffs aver, "cut[] off all opportunity for ordinary, law-abiding City residents to *lawfully* self-construct any firearms" ECF No. 25, at 9. A person interested in assembling their own gun need only start with a serialized receiver and go from there.

> **B.     This Court denied Plaintiffs' motion for a temporary restraining order and preliminary injunction on the same considerations present here.**

Plaintiffs filed a motion for a temporary restraining order and preliminary injunction premised on their Second Amendment and takings claims. ECF No. 21, at 1. This Court denied the motion. *Id.*

This Court first concluded that the Ordinance passes intermediate scrutiny:

> Because the Ordinance targets only non-serialized firearms and unfinished frames and unfinished receivers that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable for lacking a serial number, this Court finds that the Ordinance is a reasonable fit for achieving the City's objectives of decreasing the threat that ghost guns pose to the City's stated substantial and important interests.

ECF No. 21, at 20.

This Court also concluded that the Ordinance does not violate the Takings Clause. ECF No. 21, at 26. The Ordinance is not a physical taking, either expressly or implicitly. ECF No. 21, at 23. The Ordinance is also not a regulatory taking because the Ordinance is a valid exercise of the government's police power and, thus, falls within the well-established police power exception to the Takings Clause. ECF No. 21, at 25.

/ / /

/ / /

/ / /

### III. LEGAL STANDARD

This Court should dismiss Plaintiff's Complaint with prejudice. Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plaintiffs cannot make the requisite showing.

### IV. ARGUMENT

#### A. The Ordinance is consistent with the Second Amendment.

Plaintiffs' Second Amendment claim fails the two-step framework adopted by the Ninth Circuit to evaluate Second Amendment claims. *See Young v. Hawaii.* 992 F.3d 765, 783–84 (2021).

##### 1. The Ordinance does not burden protected conduct.

Plaintiffs argue that the Second Amendment guarantees the right to carry all weapons typically possessed by law-abiding citizens for lawful purposes. *See, e.g.*, ECF No. 25, at 3. This Court has already explained that strict application of a simple "hardware test" would be nonsensical to gun control laws that do not regulate weapons themselves, but some ancillary component or feature, i.e., ammunition or, as here, serialization. *See* ECF No. 21, at 12. Nothing in the Complaint indicates that Plaintiffs will lack access to California-compliant firearms, including AR-15's and handguns. Moreover, Plaintiffs are free to assemble any California-compliant firearm using pre-serialized frames or receivers.

Plaintiffs also assert a "right to self-construct protected arms." ECF No. 25, at 5. They do not cite a single case recognizing such a right. *See id.* at 5-7. Contrary to their assertions, self-assembling non-serialized firearms is not "necessary to the realization of the core right to possess a firearm for self-defense." *Id.* at 6. Again, San Diegans remain free to purchase any California-compliant firearms, including AR-15's and handguns. And, in any event, the Ordinance does not ban self-

assembling a gun, as long as the underlying receiver is serialized.

Plaintiffs argue that the Ordinance "unquestionably *destroys* fundamental guarantees under the Second Amendment" and is subject to strict scrutiny. ECF No. 25, at 7. This Court has already explained, however, that the burden imposed by the Ordinance is minimal. ECF No. 21, at 15, 17. Plaintiffs' inability to lawfully serialize unfinished frames or receivers does not *destroy* any rights. Rather, the Ordinance lawfully regulates conduct within the scope of the Second Amendment. *See* ECF No. 21, at 15, 17.

> **2. If this Court reaches step two, the Ordinance passes intermediate scrutiny.**
>
> **a. The Ordinance presents a reasonable fit with the important objectives of public safety and crime prevention.**

If the analysis proceeds to step two, this Court has already determined that intermediate scrutiny is the correct level of scrutiny. ECF No. 21, at 17. In the firearms context, a regulation passes intermediate scrutiny if the government's objective is "significant, substantial, or important" and there is a "reasonable fit" between the challenged regulation and the asserted objective. *Silvester v. Harris*, 843 F.3d 816, 821-22 (2016).

There can be no dispute that public safety and crime-prevention are important governmental objectives. ECF No. 21, at 19 (collecting cases). The Ordinance constitutes a reasonable fit with those important objectives because it bans only non-serialized firearms and unfinished frames and unfinished receivers that are not within a categorical exception. The San Diego Police Department, House Committee on Homeland Security, and ATF all recognize that ghost guns and ghost gun kits undermine the government's ability to prevent and prosecute gun crime. ECF No. 15, at 4-5; Ordinance O-21367. They undermine prevention because they do not require background checks. And they undermine prosecution

because ghost gun kits are virtually untraceable. That is why this Court concluded that the Ordinance passes intermediate scrutiny. ECF No. 21, at 20.

### b. Plaintiffs' "pretextual" argument fails as a matter of law.

Plaintiffs argue that the City's purported interest in the Ordinance is "pretextual." ECF No. 25, at 12. Plaintiffs question whether the Ordinance is necessary and effective to effectuate the City's public safety and crime prevention goals. *See Id.* Put another way, Plaintiffs' argument is merely that the Ordinance is not a reasonable fit for its goal. That is a question of law and this Court has already decided it against Plaintiffs. ECF No. 21, at 19-22. Nothing in Plaintiffs' argument suggests that there is some factual issue that warrants proceeding past the motion to dismiss stage. "'It is a matter of common sense' that tracing firearms enhances public safety and aids crime solving." ECF No. 21, at 20 (quoting *Palmer et al. v. Sisolak et al.*, No. 3:21-cv-00268-MMD-WGC (D. Nev), Order dated July 26, 2021, ECF No. 51).

Plaintiffs put much emphasis on the fact, "under state law, the citizens of California –*except* San Diegans– will be able to continue lawfully building their own firearms even after Assembly Bill No. 879 goes into effect on July 1, 2022." ECF No. 25, at 15. But intermediate scrutiny does not require San Diego to adopt Plaintiffs' preferred regulatory scheme. *See Pena v. Lindley*, 898 F.3d 969, 980 (9th Cir. 2018) ("[W]e must allow the government to select among reasonable alternatives in its policy decisions."), *cert. denied sub nom. Pena v. Horan*, 141 S. Ct. 108 (2020). Plaintiffs do not cite any authority that preempts a municipality from regulating conduct that threatens public safety and fells criminal investigations more closely than the state in which it sits. The fact that California has selected other constitutional means to regulate ghost guns does not change the fact that the Ordinance is a reasonable fit with its important objectives.

Plaintiffs analogize to First Amendment case law in support of their

argument that the Ordinance "perversely *bars*" San Diegans from lawfully self-building firearms from unfinished frames or receivers. ECF No. 25, at 14. Plaintiffs' argument fails to recognize that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* San Diegans remain free to purchase any California-compliant firearms, including AR-15's and handguns. And they can self-assemble any California-compliant firearm, so long as they start with a serialized frame or receiver. Thus, as this Court has already explained, the Ordinance "does not severely burden Second Amendment-protected conduct, but merely regulates it." ECF No. 21, at 17.

Plaintiffs' argument that the Ordinance fails intermediate scrutiny because it lacks the "required tailoring – much less *any* tailoring, ECF No. 25, at 17, contradicts the plain text of the Ordinance. The law is tailored to the problem of ghost guns: it "targets only non-serialized firearms and unfinished frames and unfinished receivers that are not within a categorical exception, that bypass background checks by virtue of self-assembly, and that are untraceable for lacking a serial number." ECF No. 21, at 20. It does not affect the hundreds of thousands of serialized firearms sold on a yearly basis in California. Even if there were a less restrictive means of regulating ghost guns, intermediate scrutiny does not demand the use of the least restrictive means. *Silvester,* 843 F.3d at 827.

    **c.**   **Ghost guns present a real threat that is alleviated by the Ordinance.**

Plaintiffs rely on cases from outside the firearms context to argue that the City must also show that "the regulation will in fact alleviate [the claimed] harms in a direct and material way." ECF No. 25, at 20 (quoting *Doe v. Harris*, 772 F.3d 563, 577 (9th Cir. 2014). The Ninth Circuit does not require that showing. *Pena*, 898 F.3d at 979-80.

7

But even if it did, Defendants *have* shown that the threat posed by ghost guns is real and that the Ordinance alleviates it. The San Diego Police Department and the federal government have recognized that ghost guns present a real threat. ECF No. 21, at 18-19 (citing H.R. Rep. No. 116-88 at 2 (2019); Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27720, 27722–23 (2021) (proposed); Ordinance O-21367). The Third Circuit has recognized that the prevalence of non-serialized firearms "makes it more difficult for law enforcement to gather information on firearms recovered in crimes." *United States v. Marzzarella*, 614 F.3d 85, 98 (3d Cir. 2010). Finally, as this Court explained, "'it is a matter of common sense' that tracing firearms enhances public safety and aids crime solving." ECF No. 21, at 20 (quoting *Palmer*). Defendants have made the requisite showing.

### B. Plaintiffs' takings claim fails

This Court has already explained that "the Ordinance does not constitute a taking under either the physical or regulatory formulation." ECF No. 21, at 23.

#### 1. The Ordinance does not appropriate Plaintiffs' property.

Plaintiffs maintain that "a regulation [that] results in a physical appropriation of property" is a taking requiring compensation. That principle is inapplicable here because the Ordinance does not appropriate Plaintiff's property. The City of San Diego has neither taken nor will it take physical possession of non-serialized firearms or firearm components pursuant to the Ordinance. It is therefore distinguishable from *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063 (2021), where California had compelled private property owners to allow third parties to enter the property for public policy reasons. *Id.* at 2072.

Courts regularly find that laws that require dispossession of personal property – but not appropriation by the state – are not compensatory takings. The U.S. Supreme Court in *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146 (1919), held that there was no taking when distillers and jobbers were required

to dispose of their alcohol. *Id.* at 157-58. The D.C. Court of Appeals held that a law that required that certain machine guns be sold, surrendered or disposed of was not a taking. *Fesjian v. Jefferson*, 399 A.2d 861 (D.C. 1979).

This Court has already recognized that the Ordinance does not convey the disputed property for public use. ECF No. 21, at 23. There is no *use* by the City of San Diego when a ghost gun is rendered inoperable, destroyed, or transferred out of San Diego. The Ordinance, like other measures mandating dispossession, is therefore outside the text of the Takings clause.

Contrary to Plaintiffs' argument, ECF No. 25, at 21-23, the fact that the property was previously legal is irrelevant. Alcohol was legal prior to *Hamilton*, but the Supreme Court held that there was no taking there. *See* 251 U.S. at 157-58. More recently, myriad federal courts have concluded that the ATF did not effect a taking when it banned bump-stocks, a firearm component that had been legal until that point. *Guedes v. ATF*, 520 F. Supp 3d 51 (D.D.C. 2021) (collecting cases).

## 2. The Ordinance is not a *per se* taking.

The government commits a per se taking where (a) it invades a property owner's land or (b) denies all economically beneficial use of the land. Plaintiffs argue that both types of per se takings occurred here. ECF No. 25, at 23-24 Wrong and wrong.

A physical invasion is recognized as a per se taking when the government physically invades *real* property (land, airspace and water). *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992) (citing installation of "cable facilities," invasion of airspace and imposition of a navigational servitude as examples of physical invasions). Plaintiffs cite no cases extrapolating this concept to personal property, and it is not clear how requiring dispossession of ghost guns represents the City of San Diego "inva[ding]" their property.

Likewise, the denial of all economically beneficial use of property is a per se taking only when the property in question is land. Contra to Plaintiffs'

representations, the *Lucas* Court did not say "of property"; it defined this type of per se taking as "regulations that prohibit all economically beneficial use of *land*." 505 U.S. at 1029 (emphasis added). The Ordinance does not deny anyone all economically beneficial use of *land*. *See Md. Shall Issue, Inc. v. Hogan*, 963 F.3d 356, 365-66 (4th Cir. 2020) (rejecting an attempt to extend this form of categorical takings to a firearms regulation), *cert. denied*, 141 S. Ct. 2595 (2021).

What's more, the complaint does not allege facts showing that Plaintiffs have been deprived of "*all* economically beneficial uses." *See Lucas*, 505 U.S. at 1019. At best, Plaintiffs have attempted to allege a diminution in the value of the property, not that they were denied "all" economically beneficial use of it.

### 3. The Ordinance is not a regulatory taking.

Plaintiffs argue in passing at the end of their brief that the Ordinance constitutes a regulatory taking under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). ECF No. 25, at 24. They do not even try to explain how their claim meets *Penn Central*'s multifarious test. *See id.* This Court has already concluded that the Ordinance is not a regulatory taking under the *Penn Central* factors. ECF No. 21, at 26.

Dated: January 31, 2022
MARA W. ELLIOTT, City Attorney

By s/Matthew Zollman
Matthew Zollman
Deputy City Attorney

Attorneys for Defendant
CITY OF SAN DIEGO