RAYMOND M. DIGUISEPPE
CA State Bar No. 228457
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road, Suite 300
Southport, NC 28461
P: 910-713-8804
E: law.rmd@gmail.com

JOHN W. DILLON
CA State Bar No. 296788
DILLON LAW GROUP, APC
2647 Gateway Rd., Ste 105 #255
Carlsbad, CA 92009
P: 760.642.7150
E: jdillon@dillonlawgp.com

WILLIAM SACK* (PRO HAC VICE)
PA STATE BAR NO. 325863
FIREARMS POLICY COALITION
5550 Painted Mirage Road, Suite 320
Las Vegas, NV 89149-4584
P: (916) 596-3492
E: wsack@fpclaw.org

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FAHR, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SAN DIEGO, CALIFORNIA, et al.,<br><br>Defendants. | Case No.: 21-CV-1676-BAS-BGS_____<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING THE IMPACT OF 87 FED. REG. 24652 ET SEQ. (APR. 26, 2022) ON SAN DIEGO CITY MUNICIPAL CODE SECTION 53.18.**<br><br>Judge: Hon. Cynthia Bashant<br>Date:  No date set<br>Courtroom: 4B<br>Trial: Not Set |

In the context of Defendants' pending motion under F.R.C.P. Rule 12(b)(6) to dismiss Plaintiffs' Second Amendment and Takings claims, this Court has requested supplemental briefing concerning the effect on the Second Amendment claim of the final rule issued by the Department of Justice ("DOJ") and the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to modify the definition of "firearm" for

purposes of the federal regulations governing serialization requirements. Supp. Brief ("SB") Order at 3 (citing 86 Fed. Reg. 27720 et seq.) (hereafter "Final Rule").

The focal point of the Court's question for supplemental briefing are the stated exceptions to the ban under San Diego Municipal Code Section 53.18 ("Section 53.18"), generally rendering it unlawful for any person within the City of San Diego to "possess," "purchase," "transport," "receive," "sell," "transfer," or "offer to transfer an unfinished frame or receiver." The Court observes that Section 53.18 does not apply to an "unfinished frame or receiver" that is either (1) "imprinted with a serial number issued to that unfinished frame or unfinished receiver by a Federal Firearms Importer or Federal Firearms Manufacturer" or (2) "engraved or permanently affixed with a serial number provided by the California Department of Justice for that unfinished frame or unfinished receiver." SB Order at 1-2. The Court further observes that, once effective, the Final Rule will modify "the definition of 'firearm' and . . . provide a more comprehensive definition of 'frame or receiver,'" thereafter requiring serialization of "each frame or receiver" as so defined. *Id.* at 2.

As modified, the Final Rule will include within the definition of "firearm" the "frame" or "receiver" of any weapon "that will, is designed to, or may readily be converted to expel a projectile," as well as "a weapon parts kit that is designed to or may readily be assembled, completed, converted, or restored to expel a projectile by the action of an explosive." Final Rule at 24654, 24661. And it will include within the definition of "frame or receiver" those "frames or receivers that are partially complete, disassembled, or inoperable, or a frame or receiver that has reached a stage in manufacture where it may readily be completed, assembled, converted, or restored to a functional state." *Id.* at 24663. Based on these prospective changes, the Court infers that "Plaintiffs presumably now, or will soon, have access to unfinished frames and receivers that fit squarely within one of the exceptions to Section 53.18," undermining their allegation that the City precludes them from engaging in lawful self-manufacturing with "unfinished" frames or receivers. SB Order at 2-3.

1

This prospective change does not undermine Plaintiffs' allegation and certainly could not support a dismissal of Plaintiffs' Second Amendment claim under the lenient standards that the Court must apply in ruling on Defendants' motion to dismiss under Rule 12(b)(6). This is clear for four essential reasons.

**First**, it is simply premature to render any judgments based on the effect of the Final Rule when it doesn't become effective for another three months from now.

**Second**, and more to the point, it's a matter of speculation as to whether, the extent to which, or when Plaintiffs or anyone else in San Diego City *will* "have access to unfinished frames and receivers that fit squarely within one of the exceptions to Section 53.18." As the Final Rule makes clear, "these determinations must necessarily be made on a case-by-case basis," Final Rule at 24692, and the ATF employs a multi-faceted test consisting of subjective and objective factors ultimately designed to decide, in the judgment of the agency, whether classifying the specific component as a "frame or receiver" is consistent with the legislative intent of Congress and the ATF's prior "firearm" classifications. 86 FR 27728.[1] Similarly, whether a "partially complete, disassembled, or inoperable" frame or receiver

---

[1] Here are the factors that ATF considers in making this determination:

> (a) Which component the manufacturer intended to be the frame or receiver; (b) which component the firearms industry commonly considers to be the frame or receiver with respect to the same or similar firearms; (c) how the component fits within the overall design of the firearm when assembled; (d) the design and function of the fire control components to be housed or integrated; (e) whether the component may permanently, conspicuously, and legibly be identified with a serial number and other markings in a manner not susceptible of being readily obliterated, altered, or removed; (f) whether classifying the particular component is consistent with the legislative intent of the Act and this part; and (g) whether classifying the component as the frame or receiver is consistent with the Director's prior classifications. No single factor is controlling.

86 FR 27728. Both the Notice of Public Rulemaking ("NPRM") and the Final Rule have incorporated ATF's determination test. NPRM at 27721; Final Rule at 24655, 24662 ("The NPRM also proposed to codify in the regulations the factors ATF considers when classifying the frame or receiver of a firearm.").

2

constitutes a "firearm" for serialization purposes is largely a discretionary determination of the ATF based on the above-referenced test and "any available instructions, guides, templates, jigs, equipment, tools, or marketing materials" about the nature of the part(s) that the Director "may" choose to "consider." 86 FR 27729.

Necessarily then, it cannot be said with any certainty—especially not by laypeople or courts lacking the technical expertise in the industry—whether any particular materials, parts, or components that a San Diego City resident may have or seek to obtain in the future individually or collectively constitute an "unfinished frame or receiver" *within the revised definition of a "firearm"* under the Final Rule. Unless and until those objects are presented to the ATF for a technical determination, average law-abiding citizens like Plaintiffs—who seek to exercise the rights to build their own firearms but clearly cannot themselves purport to answer questions like whether classifying a particular component or components as a "firearm" would be consistent with Congress's intent and ATF's prior classifications—cannot act with any confidence or certainty that the items they may possess or seek to acquire for such purposes "fit squarely within one of the exceptions to Section 53.18."

Indeed, the Final Rule itself recognizes the real-world complications law-abiding citizens face. Not only does it accommodate them by continuing to preserve people's right to engage in homebuilding for personal use without the need for *any* markings at all, Final Rule at 24653, 24706, but the rule emphasizes that ATF's voluntary determination process—which has mostly just served the manufacturing industry to date—permits anyone to seek and obtain a determination "on whether an item is a 'firearm'" so as to clarify the legal status of the item, *id.* at 24666.

***Third***, under the Final Rule, for anything that *is* ultimately classified as a "frame or receiver" subject to serialization as a "firearm," it must be "readily completed, assembled, restored, or otherwise 'converted' to function as a frame or receiver" or capable of being so "readily" altered. Final Rule at 24653; *see id.* at 24654, 24661, 24663 (applying this requirement to "frames or receivers" generally,

3

"weapon parts kits," and "partially completed" frames or receivers). As the Final Rule itself says, "the final rule makes clear that articles that have not yet reached a stage of manufacture where they are clearly identifiable as an unfinished component of a frame or receiver (e.g., unformed blocks of metal, liquid polymers, or other raw materials) are *not* frames or receivers." *Id.* at 24653 (italics added).

The Final Rule sets out a specific, multi-faceted definition of "readily," which focuses on the "time, ease, expertise, equipment, availability, expense, scope, and feasibility" of converting the items or items into a functional frame or receiver, Final Rule 24663, and which "[e]xpressly excludes from the definition of 'frame or receiver' unformed blocks of metal, liquid polymers, and other raw materials," *id.* at 24700. This "readily" requirement is "necessary to determine when a weapon, including a weapon parts kit, a partially complete or damaged frame or receiver, or an aggregation of weapon parts becomes a 'firearm[.]'" *Id.* at 24663. It reflects "when the critical stage of manufacture has occurred in which an unfinished component part of a weapon becomes a 'frame or receiver' under 18 U.S.C. 921(a)(3)(B)." *Id.* at 24699. Thus, for example, the "readily" requirement is essential to any proper finding that a weapons parts kit is sufficiently complete so as to fall within the definition of a "firearm" that is subject to the serialization requirement, because "[a]n essential part missing from the kit that cannot efficiently, quickly, and easily be obtained would mean that the weapon cannot readily be completed, assembled, restored, or otherwise 'converted' to a functional state." *Id.* at 24685.

Section 53.18's prohibitions against "unfinished" frames or receivers are not limited by any such "readily" requirement. They apply to any "piece of any material that does not constitute the completed frame [or receiver] of a firearm, but that has been shaped or formed in any way for the purpose of becoming the frame [or receiver] of a firearm, and which may be made into a functional frame [or receiver] of a firearm through milling, drilling, or other means." §53.18(b)(11)-(12). Many things "may be made" into a frame or receiver by being "shaped or formed" in *some*

4

1   way "for the purpose of becoming" such an object, including all sorts of "raw
2   materials" whose purchase, possession, or receipt do not fairly reflect that a person
3   has reached "the critical stage of manufacture" under the Final Rule. Thus, countless
4   items *not* subject to the federal serialization requirement will inevitably remain
5   prohibited as "unfinished" frames or receivers in San Diego City, leaving people like
6   Plaintiffs under a continuing threat of prosecution in seeking to build their own guns.

7          ***Fourth***, to the extent any doubt *might* exist on this issue, the existence of a
8   question cannot support a dismissal pursuant to Rule 12(b)(6), under which the Court
9   "accepts as true the allegations in the complaint, construes the pleading in the light
10  most favorable to the party opposing the motion, and resolves all doubts in the
11  pleader's favor." *Motaghedi v. Pompeo*, 436 F.Supp.3d 1345, 1354 (E.D. Cal. 2020).
12  Plaintiffs' complaint undoubtedly survives any such question about the potential
13  effects of the Final Rule. Rather, this case is ripe for the discovery process.
14  Investigating and gathering evidence on when and what firearm precursor parts meet
15  these new definitions is the only way of knowing and thus being able to properly
16  resolve whether plaintiffs *will* "have access to unfinished frames and receivers that
17  fit squarely within one of the exceptions to Section 53.18"—now or later. *See United*
18  *Public Workers of America*, 330 U.S. 75, 90, n. 22 (1947) (federal courts are "not to
19  decide" any "abstract, hypothetical or contingent questions," "any constitutional
20  question in advance of the necessity for its decision," or "any constitutional question
21  except with reference to the particular facts to which it is to be applied").

22         Incidentally, the Final Rule has no bearing on Plaintiffs' distinct Takings
23  claim concerning the property of which they have already been required to
24  dispossess themselves, for all the reasons already stated in their briefing to date.

25         So, nothing has changed in the final calculation: this motion must be denied.
26  Dated: May 16, 2022
27  THE DIGUISEPPE LAW FIRM, P.C.        DILLON LAW GROUP, APC
28  */s/ Raymond M. DiGuiseppe*          */s/ John W. Dillon*

5

Raymond M. DiGuiseppe
THE DIGUISEPPE LAW FIRM, P.C.
4320 Southport-Supply Road
Suite 300
Southport, NC 28461
P: 910-713-8804
E: law.rmd@gmail.com

John W. Dillon
DILLON LAW GROUP, APC
2647 Gateway Rd.
Ste 105 #255
Carlsbad, CA 92009
P: 760.642.7150
E: jdillon@dillonlawgp.com

FIREARMS POLICY COALITION
*/s/ William Sack\**
FIREARMS POLICY COALITION
5550 Painted Mirage Road
Suite 320
Las Vegas, NV 89149-4584
P: (916) 596-3492
E: wsack@fpclaw.org
*Attorneys for Plaintiffs*

6