UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES FAHR, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF SAN DIEGO, *et al.*,<br><br>    Defendants. | Case No. 21-cv-1676-BAS-BGS<br><br>**ORDER DIRECTING PARTIES TO PROVIDE SUPPLEMENTAL BRIEFING** |

In the wake of the United States Supreme Court's decision in *District of Columbia v. Heller*, 544 U.S. 570 (2008) ("*Heller*"), the Courts of Appeals each devised a two-step constitutional framework for assessing Second Amendment challenges, bearing similarity across the eleven Circuits. *See, e.g., Young v. Hawaii*, 992 F.3d 765, 782 (9th Cir. 2021).[1] In the Ninth Circuit, for example, courts first examine whether the "challenged law affects conduct that is protected by the Second Amendment" based upon a "historical

---

[1] Each of the other ten United States Courts of Appeals have adopted similar two-step analytical approaches to the Second Amendment as the Ninth Circuit. *See Worman v. Healey*, 922 F.3d 26, 33, 36–39 (1st Cir. 2019); *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 127–28 (2d Cir. 2020); *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Attorney General N.J.*, 910 F.3d 106, 117 (3d Cir. 2018); *Harley v. Wilkinson*, 988 F.3d 766, 769 (4th Cir. 2021); *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 194–95 (5th Cir. 2012); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012); *Kanter v. Barr*, 919 F.3d 437, 442 (7th Cir. 2019) (en banc); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010); *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1260 n.34 (11th Cir. 2012); *United States v. Class*, 930 F.3d 460, 463 (D.C. Cir. 2019).

understanding of the scope of the right." *Young*, 992 F.3d at 784 (quoting *Silvester v. Harris*, 843 F.3d 816, 820–21 (9th Cir. 2016)); *accord Kanter*, 919 F.3d at 441 (instructing that the first step asks whether "the challenged law regulates activity falling outside the scope of the right as originally understood"). If the challenged law is among the "presumptively lawful" forms of gun control explicitly identified in *Heller*,[2] or if "there is persuasive historical evidence showing that the regulation does not impinge on the Second Amendment right as it was historically understood," the analysis need not go any further: the constitutional challenge failed. *See Young*, 992 F.3d at 784 (quoting *Silvester*, 843 F.3d at 821); *accord Greeno*, 679 F.3d at 518 (holding that if the challenged law governs conduct beyond the Second Amendment's textual scope, "then the analysis can stop there; the regulated activity is categorically unprotected").

If the conduct regulated by the challenged law is protected by the Second Amendment, courts proceed to the second step of the analytical framework: determining what level of scrutiny to apply. *See Young*, 992 F.3d at 784 (quoting *Silvester*, 843 F.3d at 821). The answer to this question depends upon the severity of the burden the challenged gun control imposes upon the "right to bear arms." *See id.* (quoting *Silvester*, 843 F.3d at 821); *accord Kanter*, 919 F.3d at 441 (instructing that second step examines "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right"). Generally, one of three tiers of scrutiny applied: "If a regulation 'amounts to a destruction of the Second Amendment right,' it is unconstitutional under any level of scrutiny; a law that 'implicates the core of the Second Amendment right and severely burdens that right' receives strict scrutiny; and in other cases in which Second

---

[2] The *Heller* Court identified a non-exhaustive list of presumptively constitutional gun regulations, which have lived alongside the right to bear arms for the purpose of self-defense since the birth of this nation. *See* 554 U.S. at 627 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.").

Amendment rights are affected in some lesser way, [courts generally] apply intermediate scrutiny." *Young*, 992 F.3d at 784 (quoting *Silvester*, 843 F.3d at 821).

On June 23, 2022, while Defendants' motion to dismiss in the instant action was pending (*see* Mot. to Dismiss ("Mot."), ECF No. 22), the United States Supreme Court in *New York Rifle & Pistol Ass'n v. Bauer*, No. 20-843, --- S.Ct. ---, 2022 WL 2251305, at *1 (U.S. June 23, 2022) ("*Bauer*") curtailed the two-step approach described above. *See Bauer*, 2022 WL 2251305, at *7–8 ("In the years since [*Heller*], the Courts of Appeals have coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny. Today, we decline to adopt that two-part approach. In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."). Specifically, the Court held that the Court of Appeals' test involves "one step too many," and denounced application of the second step of the above-described constitutional framework. *Id.*, at *8.

Having reviewed the briefs in support of and in opposition to the pending Motion, the Court observes that the parties principally hash out whether San Diego Municipal Code § 53.18 ("Section 53.18") is consistent with the Second Amendment within the context of the now-repudiated second step of the above-referenced constitutional framework as opposed to within the first step, which is anchored in the Second Amendment's text and its historical understanding. For instance, while Defendants summarily assert that the historical record demonstrates Section 53.18 is comparable to "long-standing, presumptively lawful regulation[s]," Defendants do not actually proffer any historical analogy in support of that assertion. (Mem. in supp. of Mot. ("Mem.") at 6, ECF No. 22-1.) Similarly, Plaintiffs devote just one paragraph in their attempt to demonstrate there exists a historical record for the premise the right to "bear" arms has been textually and historically understood to encompass the collateral right to self-manufacture of firearms. (*Id.* at 6–7.) After *Bauer*, it is critical that parties to a Second Amendment challenge develop a historical record on these issues.

Therefore, *Bauer* necessitates supplemental briefing to aid the Court in resolution of the Motion on the following issues:

    1.    Whether the right to "bear arms" encompasses the private manufacture of firearms as a textual and historical matter; and

    2.    Assuming an affirmative answer to the first question, whether there exists in the annals of this Nation's history lawful gun control that is analogous to Section 53.18. *See Bauer*, 2022 WL 2251305, at *13 (instructing lower courts to examine "at least two metrics" in assessing the sufficiency of a historical analogy: "how and why the regulations burden a law-abiding citizen's right to armed self-defense").

Accordingly, the Court **HEREBY ORDERS** the parties to concurrently file supplemental briefs addressing the above-mentioned questions **by no later than July 22, 2022**.

**IT IS SO ORDERED.**

**DATED: July 1, 2022**

Hon. Cynthia Bashant
United States District Judge